**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

SUGAR FACTORY LINCOLN ROAD, LLC,             CASE NO.: 20-17980-LMI
                                             Chapter 11
    Debtor.                                  Jointly Administered
_____/

In re:

SUGAR FACTORY OCEAN DRIVE, LLC,              CASE NO.: 20-17981-LMI
                                             Chapter 11
    Debtor.
_____/

**DEBTOR'S MOTION: (I) TO APPROVE LICENSE PURCHASE AGREEMENT; (II) TO ASSUME AND ASSIGN EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. § 365(a); AND (III) FOR ORDER AUTHORIZING SALE OF PROPERTY PURSUANT TO 11 U.S.C. § 363 AND RELATED RELIEF**

    Debtor and Debtor-in-Possession, SUGAR FACTORY OCEAN DRIVE, LLC, by and through undersigned counsel and pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014, file this motion ("**Motion**") for an order: (a) approving the License Purchase Agreement ("**LPA**") between the Debtor and Barry Cohen (the "**Purchaser**"), attached as Exhibit "A"; (b) authorizing the Debtor's sale of all right, title and interest in, to and under its Liquor License, defined below, to be sold to the Purchaser under the LPA, free and clear of all liens, claims, encumbrances and other interests (the "**Sale Transaction**"); (c) approving the Debtor's assumption of a certain executory contract under the LPA pursuant to 11 U.S.C. § 365, and fixing any cure amounts relating thereto, and authorizing Debtor's payment of same – although no such cure requirements are known at this time; (d) authorizing the Debtor's assignment of its Liquor License to the Purchaser; (e) affording the Purchaser the status of a good faith purchaser and entitling the Purchaser to the protections of 11 U.S.C § 363(m); and, (f) otherwise authorizing

the Debtor to enter into the Sale Transaction contemplated by the LPA. In support of this Motion, Debtor states as follows:

### Preliminary Statement

1. The Debtor was formed in or about 2014 to build-out and operate a licensed "Sugar Factory" establishment, which are brasserie-style sidewalk cafés that include a restaurant, bar and candy shop under one roof. This Sugar Factory cafe was located in Miami-Dade County in the Victor Hotel in Miami Beach, FL.

2. Debtor's Sugar Factory cafe operated under license from Sugar Factory, LLC, and also held an alcoholic beverage licenses (the "**OD Liquor License**") issued by the State of Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco.

3. Debtor operated its Sugar Factory cafe until May 31, 2020, when it closed its doors as a result of a member dispute, the COVID-19 pandemic, and other business difficulties which made continued operations impractical, if not impossible. At that time, Debtor surrendered its rented premises and contents to its landlord in exchange for a release and return of a $300,000 security deposit and ceased all operations.

4. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 23, 2020 in order to reorganize through a liquidation of its assets.

5. Debtor has identified and procured an unrelated third-party purchaser of its OD Liquor License. As described in the attached signed LPA effective September 1, 2020, the Purchaser is prepared to purchase the OD Liquor License from Debtor for a gross purchase price of $135,000.00 (the "**Purchase Price**"). The Purchaser has placed a ten percent (10%) deposit ($13,500,000.00) into escrow with the Escrow Agent defined in the LPA.

6. By this Motion the Debtor seek an Order: (a) approving Debtor's assumption of the OD Liquor License; (b) approving the LPA for the sale and assignment of the OD Liquor License to the Purchaser; (c) authorizing the sale and assignment of the OD Liquor License to the Purchaser free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. §§ 363(b) and (f) and Fed. R. Bankr. P. 6004(c) and 9014; and, (d) affording the Purchaser the protections of a good faith purchaser granted by 11 U.S.C. § 363(m).

7. The material terms of the LPA, subject to Court approval, are as follows:

    a. The Purchaser will pay the Purchase Price in cash at Closing, which will include the payoff and satisfaction of the secured loan from CLS Investments of Oregon, LLC c/o Provantage Group, LLC (the "**Lender**" – listed in Debtor's Schedule E under Provantage Group, LLC) in the amount of $123,368.66, with the net balance of $11,631.34 to Debtor's bankruptcy estate (the "**Sale Proceeds**"), to acquire the Debtor's interest in the OD Liquor License;

    b. The Debtor, after assuming the OD Liquor License, will sell, assign and transfer the OD Liquor License to the Purchaser.

    c. The Purchaser will acquire the OD Liquor License free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f) and Bankruptcy Rules 6004(c) and 9014.

    d. The Debtor warranties and represents that the individual signing the LPA on behalf of the Debtor has authority to bind the Debtor to the agreements set forth therein.

    e. The proposed sale of the OD Liquor License pursuant to the LPA is a material component of the Debtor's plan to exit Chapter 11 through a liquidating plan, and although such plan(s) has not yet been filed, the proposed Sale Transaction as well as the

3

**Aaronson Schantz Beiley P.A. | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880**

proposed sale of Sugar Factory License Agreements [ECF 47] will help to satisfy a significant portion of the Debtor's outstanding debts.

## Jurisdiction

8. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. and 11 U.S.C. § 363(b) and (f).  This is a core proceeding pursuant to 28 U.S.C. § 157.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

10. Relief is requested herein pursuant to 11 U.S.C. § 363(b) and (f) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Procedural and Factual Background

11. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 23, 2020. [OD ECF 1].

12. Debtor is a Nevada limited liability company organized in or about January, 2014 and duly registered with the State of Florida to build-out and operate a licensed brasserie-style sidewalk café restaurant, bar and candy shop under the "Sugar Factory" brand.   Debtor is owned equally by Sugar Factory Ocean Drive Holding, LLC and Miami Shore, LLC.

13. Debtor acquired its Sugar Factory and OD Liquor License from the prior owner-operator, Robert Azinian, who transferred all interests in the Sugar Factory entities to the Debtor following a dispute which included the unauthorized assignment/transfer of interests to Jayant Viradia and other third parties without the express written consent of Sugar Factory, LLC and in violation of their agreements.

14. Debtor operated its restaurant until it closed its doors and ceased operations, as detailed above.

**Aaronson Schantz Beiley P.A. | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880**

15. For the past many months, the non-managing Member of the Debtor, as well as their common principal and spouse (the "**Viradia Parties**") have sought and received the Debtor's financials in an effort to attempt to frame a complaint and causes of action against the Debtor, the Managing Member, the Manager and her spouse, which have been or would be met with counterclaims against the Viradia Parties for breaches of contract, tortious interference, abuse of process, and/or frivolous litigation claims, among others.

16. For these and other reasons and in a global effort to restore order out of chaos, the Debtor's common Manager made the decision, as authorized by the Debtor's organizational documents and the law and based upon good, sufficient and sound business purposes and justification to liquidate the remaining assets of the Debtor through a Ch. 11 reorganization and, in turn, realize the maximum return on the sale of those assets to bring significant money into the bankruptcy estate for the benefit of all creditors.

17. No cure costs are due under the OD Liquor License, therefore, the Debtor is able to assume the OD Liquor License without default or cure costs being incurred by the bankruptcy estate, thereby allowing the Sale Transaction to be consummated and completed upon Court approval.

18. The LPA was negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor, its insiders and affiliates, nor the Purchaser or his agents have engaged in any conduct that would cause or permit the LPA or any part of the Sale Transaction to be avoided or subject to avoidance under the Bankruptcy Code.

19. The Purchaser is a good faith purchaser as defined by the Bankruptcy Code and, as such, the Purchaser is entitled to all of the protections afforded thereby.

**Aaronson Schantz Beiley P.A.** | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880

## Relief Requested and Memorandum of Law

20. By this Motion, the Debtor seeks an Order: (a) approving the LPA between the Debtor and the Purchaser; (b) authorizing the Debtor's sale of all right, title and interest in, to and under the OD Liquor License to the Purchaser free and clear of all liens, claims, encumbrances and other interests; (c) approving the Debtor's assumption of the OD Liquor License pursuant to 11 U.S.C. § 365; (d) authorizing the Debtor's assignment of the OD Liquor License to the Purchaser; (e) affording the Purchaser the status of a good faith purchaser and entitling the Purchaser to the protection of 11 U.S.C § 363(m); and (f) otherwise authorizing the Debtor to enter into the transaction contemplated by the LPA.

### A. The Debtor is entitled to assume the OD Liquor License pursuant to 11 U.S.C. § 365(a).

This Court should permit the Debtor to assume the OD Liquor License because it is an executory contract, and such assumptions will significantly benefit the Debtor's bankruptcy estate. The ability to assume an executory contract is governed by Section 365(a) of the Bankruptcy Code, which provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." *See* 11 U.S.C. § 365(a). The ability of a debtor to assume an executory contract is limited by Section 365(b) of the Bankruptcy Code when an executory contract is in default. In such cases, the debtor must cure any existing default, compensate the non-debtor party to the contract for any actual pecuniary loss, and provide adequate assurances of future performance before any assumption can occur. *See* 11 U.S.C. § 365(b). Here, no default has occurred under the OD Liquor License and/or the Lender has not declared a default, and thus there is no impediment to the Debtor's assumption of the OD Liquor License and no cure is necessary.

6

The term "executory contract" is not defined in the Bankruptcy Code, but the majority of courts to address the issue have adopted the definition espoused by Professor Vern Countryman, which defines an executory contract as "an agreement in which 'the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'" *See In re Chira*, 367 B.R. 888, 894 (Bankr. S.D. Fla. 2007). Other courts have adopted a less restrictive definition called the "functional approach" that analyzes not whether obligations remain unperformed by both parties to an agreement, but whether rejection or assumption of such agreement will bring a benefit to the bankruptcy estate. *See In re Gen. Dev. Corp.*, 84 F.3d 1364, 1374 (11th Cir. 1996).

Here, the OD Liquor License is an executory contract because ongoing material obligations exist between the Debtor and Lender. The OD Liquor License is not in default and has not expired and/or no default or termination has been declared by the Lender, who is fully aware of this bankruptcy proceeding, and is agreeable to Debtor's assumption of the OD Liquor License and subsequent sale and assignment of that license to the Purchaser and payoff, as evidenced by their consent and approval attached to the LPA. There is no valid reason to deny the Debtor's ability to assume the OD Liquor License pursuant to Section 365(a) of the Bankruptcy Code and the assumption will benefit the Debtor's estate, and therefore this relief should be granted.

### B. The Debtor is justified in selling the OD Liquor License pursuant to 11 U.S.C. § 363(b).

#### i. Section 363(b).

In addition to permitting the Debtor to assume the OD Liquor License, this Court should authorize the sale of the OD Liquor License to the Purchaser pursuant to Section 363(b)(1) of the Bankruptcy Code because the sale is in the best interest of the Debtor and its creditors, maximizes the value of the OD Liquor License for the benefit of the Debtor's bankruptcy estate, and is

7

**Aaronson Schantz Beiley P.A. | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880**

justified by legitimate business purposes. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Bankruptcy Code does not specify a standard for determining when approving a sale of property under Section 363(b) is appropriate. In lieu of a statutory guideline, however, courts have determined that 363 sales outside the ordinary course of a debtor's business are proper when there is an "articulated business justification, other than appeasement of major creditors," that supports such action. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Inst'l Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 780 F.2d 1223, 1225-26 (5th Cir. 1986).

### ii. The "Business Justification" Rule and other 363 Standards.

The rule adopted by the *Lionel* court requires that a judge determining a § 363(b) application expressly find, from the evidence presented before him/her at the hearing, a good business reason to grant such an application.[1] *Id.* at 1071. In the Eleventh Circuit, the business judgment rule is a "policy of judicial restraint born of the recognition that directors are, in most cases, more qualified to make business decisions than are judges." *See Intl Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n. 20 (11th Cir. 1989). Taking this policy into account, therefore, "[w]here a debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the Debtor's conduct."

---

[1] The Lionel court offered a non-exclusive list of relevant factors that a bankruptcy court might consider in ruling on a § 363 sale motion, including: the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing of the bankruptcy case, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on the Debtor's future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and whether the asset is increasing or decreasing in value. *In re Lionel Corp.*, 722 F.2d 1063, 1071.

*See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). Accordingly, where a debtor's basis for selling an asset outside the ordinary course meets the requirements of the business judgment rule, the sale in question should be approved by the court and authorized pursuant to Section 363(b).

In addition to espousing a sound business justification, a debtor should also reflect satisfaction of the elements necessary for approval of a Section 363 sale in a Chapter 11 case, which are that the proposed sale is fair and equitable, that there is a good business reason for completing the sale, and the transaction is proposed in good faith. *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-336 (Bankr. D. Del. 1987). In addition to these factors, some courts will look as well at whether the proposed transaction is an "arms-length" transaction, and whether it has been given adequate marketing. *In re Wilde Horse Enterprises. Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

Courts consistently approve sales outside of the ordinary course where the sale was in the best interest of the estate even if the debtor has not yet proposed a plan of reorganization. *See e.g., In re Burke Mountain Recreation, Inc.*, 56 B.R. 72 (Bankr. D. Vt. 1985) (approving sale of parcel of real property which comprised only portion of debtor's estate, where case pending for seven months, disclosure statement and development plan had been filed, and sale proceeds would provide working capital for debtor to open for winter ski season); *see also Phoenix Steel Corp.*, 82 B.R. at 336 (Bankr. D. Del. 1987) (approving "arms-length" sale of equipment for "fair and equitable" price after extensive advertising of sale of plant resulted in only two offers received, one in which financing contingency failed); *see also In re New Era Resorts, LLC*, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) ("sound business purpose" dictated approval of sale where

9

purchaser's offer for Debtor's real property was best possible price for asset and sale would benefit creditors).

The present availability of a good business opportunity may also be in the best interests of the Chapter 11 estate:

> [T]he real justification for authorizing the sale was the belief that the property's value depended on whether a hotel could be built in time for the World's Fair and that an advantageous sale after the opening of the World's Fair seemed unlikely. Thus, the reason was not solely that a steel skeleton was deteriorating, but *rather that a good business opportunity was presently available, so long as the parties could act quickly. In such cases therefore the bankruptcy machinery should not straitjacket the bankruptcy judge so as to prevent him from doing what is best for the estate.*

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) *quoting In re Sire Plan, Inc.,* 332 F.2d 497 (2d Cir.1964) (emphasis added).

In the instant case, the LPA proposes an arms-length transaction between the Debtor and the Purchaser, an unrelated third-party, for the sale and purchase of a license which has limited marketability and requires the approval of the Lender.

Moreover, the Purchase Price will generate funds for the bankruptcy estate that would not otherwise be realized. The proposed Purchase Price is fair and equitable and in line with the market in light of the limited demand caused by the current COVID-19 pandemic. Accordingly, sufficient evidence and cause exists to approve the LPA and authorize the Sales Transaction pursuant to Section 363(b), and this relief should be granted.

**C. The Debtor is entitled to sell the OD Liquor License free and clear of liens and other interests pursuant to 11 U.S.C. § 363(f).**

The Sales Transaction contemplates, and this Court should authorize, the sale of the OD Liquor License free and clear of all liens and other interests pursuant to 11 U.S.C. §§ 363(f) and

10

**Aaronson Schantz Beiley P.A. | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880**

Bankruptcy Rules 6004(c) and 9014, with all liens, claims and encumbrances, if any, to attach to the Sale Proceeds.

Bankruptcy Code § 363(f) permits a Debtor to sell property free and clear of all liens, claims and encumbrances where: (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f).

Under the circumstances of this case, it is clear that the Sales Transaction may proceed with the Purchaser acquiring the OD Liquor License free and clear of liens, claims, and encumbrances under Section 363(f)(2) and (f)(5) because the Lender has approved. Consequently, the Sale Transaction should proceed pursuant to Section 363(f), and the relief requested in this Motion should be granted.

**D.     The Purchaser is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m).**

The Purchaser is an unrelated third-party that negotiated the LPA at arms-length with the Debtor. Accordingly, the Purchaser is entitled to the protections afforded to a good faith purchaser under Section 363(m) of the Bankruptcy Code.

Section 363(m) provides that:

> "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

11

*See* 11 U.S.C. § 363. And while the Bankruptcy Code does not contain a definition for "good faith," courts addressing the issue have held that:

> "The 'good faith' component of the test under § 363(m) speaks to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

*See In re Colony Hill Associates*, 111 F.3d 269, 276 (2d Cir. 1997); *see also In re Lorraine Brooke Assocs., Inc.*, Case No. 07-12641-BKC-AJC, 2007 WL 2257608 at *4 (holding that a proposed purchaser that was not an insider of the debtor and negotiated the proposed sales contract at arm's length and in the absence of collusion was entitled to the protection of Section 363(m).

The LPA is the result of good faith negotiation between the Debtor and the Purchaser and reflects a reasonable and effective means by which to sell the OD Liquor License and bring funds into the Debtor's bankruptcy estate for the satisfaction of debt. Additionally, there is no evidence of fraud, collusion, or bad faith that would otherwise taint the validity of the proposed Sales Transaction. Thus, the Purchaser is a good faith purchaser as contemplated by the Bankruptcy Code and entitled to the protections afforded by Section 363(m). This relief, therefore, also should be granted.

## Conclusion

The Debtor believes that for the reasons stated herein, the relief requested in this Motion should be granted in its entirety. The Debtor is entitled to assume the OD Liquor License because assumption is in the best interest of the Debtor's estate, the Debtor's creditors, and will assist the Debtor in satisfying its debts. Further, the Court should approve the LPA and the Debtor's sale of the OD Liquor License free and clear of liens, claims, encumbrances and interests because the sale is in the best interests of the Debtor and its creditors, the Lender has approved the sale and transfer

12

**Aaronson Schantz Beiley P.A. | One Biscayne Tower, Suite 3450 | 2 South Biscayne Boulevard | Miami, Florida 33131 | 786.594.3000 | Fax 305.675.3880**

of the OD Liquor License to the Purchaser in exchange for a full payoff. Finally, the Purchaser should be granted the status of a good faith purchaser and afforded the protections of Section 363(m) because the Purchaser is unrelated to the Debtor, the Purchase Price is fair and reasonable, and the LPA was negotiated at arms' length, in good faith and in the absence of fraud or collusion.

WHEREFORE Debtor and Debtor-in-Possession, SUGAR FACTORY OCEAN DRIVE, LLC, requests that the Court enter an Order: (a) permitting the Debtor to assume the OD Liquor License pursuant to 11 U.S.C. § 365; (b) approving the LPA; (c) authorizing the Debtor's sale of the OD Liquor License to the Purchaser pursuant to 11 U.S.C. § 363(b), free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. § 363(f); (d) affording the Purchaser the status of a good faith purchaser and entitling the Purchaser to the protection of 11 U.S.C § 363(m); and, (e) awarding any other and further relief appropriate under the circumstances.

Respectfully submitted,

**Aaronson Schantz Beiley P.A.**

*/s/ Steven L. Beiley*
Steven L. Beiley, Esq.
Florida Bar Number: 912549
One Biscayne Tower, Suite 3450
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 786-594-3000
sbeiley@aspalaw.com
*Attorneys for Debtor*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that all electronic notice parties were served this 2nd day of September, 2020, on all counsel of record or *pro se* parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case through the Court's CM/ECF system, or by first class U.S. mail, postage prepaid, for all counsel or parties not authorized to receive electronically Notices of Electronic Filing or have not appeared in this case, including all creditors and notice parties.

*/s/ Steven L. Beiley*
Steven L. Beiley, Esq.

# EXHIBIT A

# LICENSE PURCHASE AGREEMENT

THIS LICENSE PURCHASE AGREEMENT (the "**Agreement**") is made and entered into this 1st day of September, 2020 by and between Sugar Factory Ocean Drive, LLC ( the "**Seller**" or "**Debtor**"), and Barry Cohen, an Individual (the "**Buyer**" and together with the Seller, the "**Parties**").

## WITNESSETH

WHEREAS, on or about July 23, 2020, Sugar Factory Ocean Drive, LLC filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida ("**Bankruptcy Court**"), which case is captioned as *In re: Sugar Factory Ocean Drive, LLC* (USBC Case No.: 20-17981-LMI) and being jointly administered under Case No. 20-17980-LMI (**the "Bankruptcy Case"**)

WHEREAS, the Debtor is the licensee of record of an existing liquor license issued by the Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco ("**DABT**"), being license #23-01703, a 4COP quota alcoholic beverage license presently issued in the name of Sugar Factory Ocean Drive, LLC for use in Miami-Dade County, Florida (the "**License**"), and

WHEREAS, Buyer is desirous of purchasing the License upon certain terms and conditions detailed herein,

NOW THEREFORE, in consideration of the sum set forth herein and other good and valuable consideration, the sum and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1. The recitals set forth are true and correct and form a material part of this Agreement.

2. Subject only to the terms of this Agreement and approval of the sale of the License by the Bankruptcy Court, Seller shall sell and Buyer shall purchase all of Seller's right, title and interest in and to the License.

3. Subject only to the terms of this Agreement and approval of the sale of the License by the Bankruptcy Court, the purchase price for the License shall be One Hundred Thirty-Five Thousand and 00/100 Dollars ($135,000.00), payable all cash at Closing via Certified Funds, Trust Account check or such other mutually agreeable process, as set forth below.

1 | Page

4.  Upon execution of this Agreement by the Parties and satisfactory confirmation of receipt of the Deposit described below, the Seller shall prepare and file as expeditiously as possible not later than three (3) business days thereafter, with the Bankruptcy Court a motion to approve this Agreement and the assumption and sale of the License to Buyer under the terms set forth herein. The Deposit shall be immediately returned to Buyer and this Agreement shall be cancelled, null and void in Buyer's absolute and sole discretion if: (i) the Bankruptcy Court does not enter an order in accordance with this Agreement approving the sale as herein provided within 60 days from the filing of the motion for approval (the "**Approval Order**"); (ii) the Bankruptcy Case is converted to a Chapter 7 case; or, (iii) a Trustee is appointed by the Bankruptcy Court. The foregoing events (i) through (iii) shall be defined as a "**Default**."

5.  Seller represents and warrants that the License will be sold pursuant to the Approval Order of the Bankruptcy Court and the transfer shall be via operation of law. The Approval Order shall provide that the sale and transfer of the License to Buyer shall be free and clear of all debt, liens, claims, charges, and encumbrances, pursuant to Sections 11 U.S.C. 363 (b) and (f), including the lien held by the Debtor's secured lender, CLS Investments of Oregon, LLC c/o Provantage Group, LLC (the "**Lender**"), which shall be deemed paid in full from the proceeds of the sale of the License as further described herein. Lender's consent to the terms herein is contained below. Upon information and belief, the DABT does not have any claims for delinquent renewal fees, escrow fees, transfer fees, penalty transfer fees or other fees and charges, including those of any alcoholic beverage wholesaler claiming by or through the DABT accruing prior to the Approval Order. Any money due to any alcoholic beverage wholesaler in the ordinary course of business that is the subject of a valid proof of claim shall be paid consistent with the Debtor's liquidating plan to be presented and confirmed in the Bankruptcy Case.

6.  Within two (2) business days following Seller's execution of this Agreement, Buyer shall place a ten percent (10%) or Thirteen Thousand Five Hundred and no/100 Dollar ($13,500.00) deposit (the "**Deposit**") in the trust account of The Tiller Law Group, P.A. (the "**Escrow Agent**"), to be held in the Escrow Agent's trust account pursuant to the terms and conditions of this Agreement. Said Deposit is non-refundable and shall be forfeited to the Debtor if the Buyer fails to close on this sale in the absence of an event of Default as described above. Escrow Agent's consent to the terms herein is contained below.

7.  Subject to the terms, conditions and warranties as specified herein, the closing of this transaction shall occur remotely or at the offices of the Escrow Agent, located at 633 North Franklin Street, Suite 625, Tampa, FL 33602, on a mutually convenient date and time within five (5) business days after entry of a final, non-appealable Approval Order by the Bankruptcy Court (the "**Closing**"). The Parties agree that the exchange and delivery of the Closing and transfer documents shall be via priority overnight courier or some other mutually acceptable process. Those documents shall include an estoppel certificate (the "**Estoppel Certificate**") from Lender certifying that there is no default under its loan to the Debtor and no cure or other payments are

due from the Debtor.

8.  At Closing, Seller shall deliver to Buyer the Approval Order, together with any and all other documentation reasonably required and necessary to effectuate the transfer of the License to Buyer. At Closing, Buyer shall pay directly to Lender, by wire transfer or other method as specified by Lender, the outstanding principal loan balance secured by the License in the amount of One Hundred Twenty Three Thousand Three Hundred Sixty Eight and 66/100 Dollars ($123,368.66) and Buyer shall pay the remaining proceeds of Eleven Thousand Six Hundred Thirty-One and 34/100 Dollars ($11,631.34) by wire transfer to the Seller's DIP account to be administered in the Bankruptcy Case.

9.  Seller agrees to cooperate with Buyer and to execute any and all documents necessary and reasonably required to effectuate the sale and transfer of the License to Buyer free and clear of all liens, claims and encumbrances. This provision shall survive Closing.

10.  Each Party represents and warrants to the other that no broker and/or real estate agent other than Buyer's broker, Provantage Group, LLC (the "**Broker**"), has been engaged in connection with this transaction. Buyer shall be solely responsible for any and all brokerage fees owed to Broker. Each Party shall indemnify, defend and save the other harmless from and against all costs, expenses or losses (including attorney's fees and court costs at trial and appellate levels) arising out of any claim of any broker alleging to have been engaged by it and entitled to a commission or compensation by reason of this transaction. Broker's consent to the terms herein is contained below.

11.  Seller makes no representations or warranties regarding Buyer's intended location and use of the license. Buyer is purchasing the license "as is, where is" to place at a location in Miami-Dade County, Florida and has ascertained that the location is properly zoned. This transaction is not contingent upon DABT approving the change of ownership to Buyer or the change of location to Buyer's premises.

12.  The Parties acknowledge and agree that the entire agreement between them is as set forth herein. Any amendments, modifications or riders to this Agreement shall be in writing between, and signed by, the Parties.

13.  This Agreement may be amended or modified at any time and in all respects by an instrument in writing executed by the Buyer and the Seller.

14.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

15.  This Agreement constitutes the entire agreement between the Parties hereto, and

BC

there are no agreements, understandings, restrictions, warranties, or representations between the Parties other than those set forth herein.

16. It is the intention of the Parties that the laws of the State of Florida should govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the Parties.

17. It is understood that all provisions, representations, warranties, promises and covenants herein shall survive the Closing of this transaction and any of them may be enforced by either Party subsequent to the date of Closing.

18. Time is of the essence in this Agreement.

19. A facsimile copy of this Agreement and any signatures hereon shall be considered for all purposes as originals.

20. If any part of this Agreement or any other agreement entered into under this Agreement is contrary to, prohibited by, or deemed invalid under applicable law or regulations, that provision will be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder of this Agreement shall not be invalidated.

IN WITNESS WHEREOF, the Parties hereto have set their hands and seals as of the date first above written.

**[BLANK TO BOTTOM – SIGNATURES ON NEXT PAGE]**

**SELLER**
Sugar Factory Ocean Drive, LLC,

_____        9/1/20
Charissa Davidovici, MGR                Date


**BUYER**
Barry Cohen, Individually

_____        9/1/2020
Barry Cohen                             Date


**ESCROW AGENT**
The Tiller Law Group, P.A.

_____        9-1-2020
Marc R. Tiller, Esq.                    Date


**LENDER**
CLS Investments of Oregon, LLC

_____        9/1/2020
By Curt M. Saunders, Manager            Date


**BROKER**
Provantage Group, LLC

_____        9-1-20
By:                                     Date


5 | Page